itime lien upon the property belonging to a bankrupt at the time of filing the petition, it would become the duty of that court to make a great number of collateral issues. For instance, it might have to direct proceedings to be commenced in a regular way in order to determine whether there was a valid maritime lien. Undoubtedly where before a person took possession of the property of a bankrupt under the proceedings in bankruptcy there were proceedings commenced under a state law by which state law it was claimed that there was a lien, it would be proper for the court in bankruptcy to allow the suit and prosecution in the state court to proceed in order that it might be ascertained whether or not there was a valid lien upon the property under the state law. So in this case the court in bankruptcy would be regulated by the adjudication of this court upon the point whether or not there was a valid maritime lien, and would direct the assignee to proceed in conformity with the decree of this court, so that there is no conflict between the two courts. If that court had actually taken possession by virtue of its officer of the property of the bankrupt it might be improper for this court to interfere, but until that is done I think the property of the bankrupt remains subject to all the liens which existed at the time of the filing of the petition, and they can be enforced. So when the first section of the law uses the words "to the ascertainment and liquidation of the liens and other specific claims thereon," it means where those liens or claims have not been already determined and ascertained by other competent tribunals; where, in other words, the question naturally arises in the course of the proceedings in bankruptcy, there the court is to determine whether or not there is a lien, and according as it may determine, decide upon its liquidation, or otherwise.

For these reasons, I think that the objection taken by the defense must be overruled, and the jurisdiction of the court in admiralty maintained. Of course it will be competent for the messenger, or the assignee, if one has since been appointed, to appear in this case as the representative of the creditors and to show, if it can be done, that there is no valid subsisting maritime lien upon this property, but, if there is. I hold it to be the duty of this court to maintain the libellants in their right to that lien.

There is an argument ab inconvenienti which is perhaps not entirely destitute of force. These supplies were furnished to the propeller in this port. All the evidence in relation to the claim and the necessity of the supplies furnished for the use of the propeller exist here. If the question were to be determined by the district court of Ohio, of course it would be necessary that proof should be sent there. That involves additional labor and expense upon the libellant, which, in the absence of any clear provision of law rendering it compulsory I do not feel inclined to subject him to. The jurisdiction of this court will be sustained.

## Case No. 7,070.

The IRONSIDES.

[15 Int. Rev. Rec. 59.]

Circuit Court, S. D. Ohio. Jan. 31, 1872.

Willey, Cary & Terrell, for mortgagees.
Mr. Ranney, Mr. Williamson, Mr. Prentiss, Mr. Griswold, and others, for state liens.

EMMONS, Circuit Judge, in deciding the questions involved in these cases, entered into a very learned and thorough discussion of the history of admiralty law in this country, and of the state lien or watercraft laws of the several states, with the long line of conflicting and varying authorities upon the subject, especially as shown in the history of the decisions of the supreme court of the United States upon the whole subject of admiralty and state law jurisdiction. Held: In affirmance of the decision of Judge Sherman [case unreported], that the mortgages upon these propellers should be paid, without reference to any liens asserted under the state watercraft law. That all such state liens were void under the recent decisions of the supreme court of the United States, although it was difficult to reconcile with these decisions the dictum of Mr. Justice Clifford in the Belfast Case, reported in 7 Wall. [74 U. S.] 624, and referred to in [Leon v. Galceran] 11 Wall. [78 U. S.] 188. The case of The Josephine, 39 N. Y. 19, and a recent decision of Judge Blatchford, reported in the last number of the Internal Revenue Record,[1] and cases in other states, were referred to in furtherance of this doctrine. The judge further said in effect that this view of the case made it unnecessary to decide what would be the relative rank of mortgages recorded under the national law and state liens, if valid.

## Case No. 7,071.

The IRRISISTIBLE.

## Case No. 7,072.

IRVIN et al. v. SCHELL.

[5 Blatchf. 157.][2]

Circuit Court, S. D. New York. May 21, 1863.

---

[1] [See The Edith, Case No. 4,282.]

[2] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]